UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EFRAIN V. MALDONADO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Civil Action No.  SA-05-CA-987-XR |
| | ) |
| SOUTHWESTERN BELL TELEPHONE, L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

On this date, the Court considered Defendant's[1] Motion for Summary Judgment (docket no. 23), Plaintiff's response in opposition, and Defendant's reply.  After careful consideration, the Court will grant the motion for summary judgment on all of Plaintiff's claims.

**Facts and Procedural Background**

Plaintiff's First Amended Complaint alleges that his former employer, Southwestern Bell Telephone, L.P., discriminated against him on the basis of his race and/or national origin ("white/hispanic") and retaliated against him because of his participation or assistance in the EEO process in violation of Title VII.

Plaintiff was employed with Southwestern Bell Telephone, L.P. ("SBT") as a customer service technician.  Plaintiff began working for SBT on May 23, 1977.  On or about July 14, 2004, Plaintiff was placed on Performance Notice, the first step in SBT's disciplinary procedure, because he failed to show up for work or advise his supervisor that he would not report to work.  On October

---

[1]The named Defendant in this lawsuit is Southwestern Bell Telephone, L.P., Plaintiff's former employer.  The motion for summary judgment was filed by AT&T Texas.  AT&T Texas has replaced SBC Texas as the assumed name or d/b/a for Southwestern Bell Telephone, L.P.

1

10, 2003, Plaintiff was placed on Written Reminder after a September 2003 customer complaint.

On March 21, 2004, Plaintiff was told that he was being placed on decisionmaking leave because of a customer complaint filed on November 26, 2003. Plaintiff states that he was not told of this before because he had been on vacation and short-term leave since December 1, 2003. SBT asserts that Plaintiff's supervisors met with him on November 26, 2003 in preparation to place him on decisionmaking leave. Decisionmaking leave allows an employee to take a paid day off to decide whether to commit to following SBT's policies and procedures. After the meeting but before Plaintiff was placed on formal decisionmaking leave, Plaintiff took several months of leave. Accordingly, Plaintiff was formally placed on decisionmaking leave when he returned. Plaintiff chose to continue his employment and promised to follow SBT's policies and procedures.

Plaintiff states that he challenged the November 26 customer complaint and was never given any documentation substantiating the charge. Another complaint was filed against Plaintiff on July 7, 2004, alleging that Plaintiff had not done the requested work. Plaintiff states that he advised SBT that the work requested by the customer was not part of the work authorized by the work order, and advised SBT that he was being discriminated against because a black female employee with a similar complaint against her had not been disciplined.

On July 16, 2004, Plaintiff was suspended from work pending termination. Plaintiff states that the reason he was given for the suspension was customer complaints. Plaintiff's affidavit states that he contacted the EEO hotline provided at work, explained what had happened, and was told they could not help. Plaintiff filed a grievance with his union regarding the suspension on July 16, 2004. On July 20, 2004, the Union requested a meeting with company representatives to discuss the grievance. On August 27, 2004, Plaintiff and his union steward met with SBT at a "day in court"

to try to resolve the issues about the customer complaints. Plaintiff would have been reinstated if he had signed a "last chance agreement" with a release discharging SBT from any claims arising out of his suspension. Plaintiff did not sign the release and was terminated from work in October 2004. Plaintiff then filed a complaint of discrimination with the EEOC (in January 2005) and received a dismissal and notice of right to sue on or about August 4, 2005. He then timely filed this lawsuit on October 6, 2005.

## Analysis

**A. Discrimination**

On motion for summary judgment, the Court subjects Plaintiff's discrimination claim to the burden shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Plaintiff must first establish a prima facie case of discrimination. *See Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003). If successful, the burden then shifts to SBT to proffer a legitimate, non-discriminatory reason for terminating Plaintiff. *See id.* If SBT satisfies its burden, the burden is then shifted back to Plaintiff to demonstrate either that SBT's legitimate, nondiscriminatory reason was simply a pretext for discrimination or that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative). *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his prima facie showing under the modified *McDonnell Douglas* standard and the defendant has responded with a legitimate nondiscriminatory reason. *Id.*

In order to establish his prima facie case of discrimination on the basis of race or national origin, Plaintiff must show he was: (1) a member of a protected class; (2) qualified for the position

3

held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001). SBT argues that Plaintiff cannot establish his prima facie case because he cannot prove he was qualified for the position. Plaintiff admitted that, shortly after being terminated, he was no longer physically capable of performing the customer service technician job. SBT also argues that Plaintiff cannot establish his prima facie case because he cannot prove that other similarly situated employees who were not from his protected class were treated more favorably.

With regard to Plaintiff's ability to perform his job at the time of his termination, Plaintiff has submitted an affidavit stating that he was physically able to perform the duties of his work at the time he was terminated. He was subsequently diagnosed with chiropathy in his shoulders. SBT has no evidence to controvert Plaintiff's statement that he was qualified for and able to perform the duties of the position at the time he was terminated. The fact that Plaintiff later became unable to physically perform his job does not prevent Plaintiff from establishing this element of his prima facie case.

The Court must therefore focus on whether Plaintiff has sufficiently supported his claim of disparate treatment. Plaintiff points to an African-American employee, Valjean Pierson, who told him that she had also received customer complaints but had not been suspended or discharged. In his deposition, Plaintiff testified that Valjean Pierson told her a "lady had filed an executive complaint on her" but she was not disciplined. SBT argues that Pierson is not a valid comparator because she received only one complaint in the twenty years she worked for defendant, and she accepted responsibility and immediately returned to the customer's residence and completed the job.

In contrast, Plaintiff received three separate and more serious complaints over a six-month period. Further, SBT points out that Pierson received various customer commendations for the professional manner in which she consistently conducted herself.

To establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to [ ] [another] employee under 'nearly identical' circumstances"; that is, "'that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by ... [other] employee[s].'" *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). The Court agrees with SBT that Pierson's conduct was not nearly identical to Plaintiff's and thus, Plaintiff has not shown that SBT gave her preferential treatment under nearly identical circumstances. Accordingly, Plaintiff has failed to establish his prima facie case of discrimination.

SBT next argues that, even if Plaintiff can establish his prima facie case, it has proffered a legitimate, nondiscriminatory reason for his termination, and Plaintiff has failed to raise a fact issue on pretext. SBT states that it terminated Plaintiff because he had received three significant customer complaints over a six-month work period (excluding time spent on leave). In addition, when SBT investigated these complaints, it found that during the September 2003 incident, Plaintiff left the customer with no working lines and a wire running through an open window. As part of the November 2004 incident, Plaintiff had to return to the worksite three times to finally complete the order, complained about SBT as a company during his third trip, and allowed the customer/contractor to supply the wire and ascend a ladder to run the wire, which could have subjected SBT to liability. Further, as part of the July 2004 incident, Plaintiff "openly displayed his discontent with the customer's request, left the jobsite with no working lines, and failed to notify the customer that he was leaving." SBT asserts that these serious complaints were the reason for

Plaintiff's termination.

Plaintiff states that he challenged the November 2003 complaint against him, but was never given any documents by SBT that substantiated the charge. Plaintiff also grieved the July 2004 complaint, stating that the work requested by the customer was not part of the work authorized by SBT in the work order. The Court finds that this is insufficient to raise a fact issue regarding the falsity of SBT's explanation such that a fact issue is raised on pretext. Plaintiff also fails to establish pretext based on disparate treatment because he received more complaints than Pierson. Plaintiff also also fails to raise a fact issue on a mixed-motive theory. Accordingly, SBT is entitled to summary judgment on Plaintiff's discrimination claim.

**B. Retaliation**

The *McDonnell Douglas* evidentiary framework also applies to Title VII retaliation claims brought under a pretext theory. Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. To state a prima facie claim for retaliation, Plaintiff must establish that (1) he engaged in protected activity; (2) he was subjected to an action that a reasonable employee would have found materially adverse; and (3) a causal nexus exists between the protected activity and materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___ (2006).

SBT argues that Plaintiff's retaliation claim is time-barred because he has never filed an EEOC retaliation charge. Plaintiff argues that he was not required to file an EEOC charge specifically on retaliation because the retaliation charge is like or related to the discrimination charge. In addition, Plaintiff cites *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) for the proposition that the Court has ancillary jurisdiction over the retaliation claim.

Plaintiff states that he engaged in the protected activities of filing a grievance and calling the EEO hotline provided by SBT. He argues that because SBT has structured its organization such that a given individual has authority to accept notice of discrimination, then notice to that individual is sufficient to hold the employer liable. Plaintiff also argues that SBT retaliated against him by terminating him after he refused to sign the Settlement and Last Chance Agreement and Release, which included a provision that he waive his right to pursue Title VII claims. Plaintiff further argues that he was not required to file a charge of retaliation with the EEOC because it is part of the same grievance and grows out of the charge of discrimination.

1. Retaliation related to the last chance agreement and release

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "*because* he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Plaintiff's response to the motion for summary judgment states that "[o]n or about August 10, 2004, Defendant had already concluded that [Plaintiff] would be fired for misconduct." Response at 3 (citing to the separation proposal). However, at his August 27 "day in court," Plaintiff was offered the opportunity for reinstatement, provided that he sign the settlement and last chance agreement and release of all claims (including any Title VII claims) relating to his suspension. Plaintiff refused to sign the agreement, and SBT terminated him, as it had already planned to do before he refused to sign the release. Plaintiff argues that SBT retaliated against him by terminating him because he refused to sign the release of his Title VII claims. However, SBT asserts that it terminated him because of his customer complaints, and,

7

as Plaintiff admits, SBT had already decided to terminate him before it ever offered him the last chance agreement. At most, SBT refused to reinstate him because he refused to sign the last chance agreement and release. Thus, Plaintiff cannot establish a causal connection between his discharge and his refusal to sign the last chance agreement and release. The fact that SBT went ahead with the termination after the proposed settlement and release failed is insufficient to establish a claim for retaliation. In addition, while there may be instances in which an employer's threat to discharge an employee who did not agree to drop his Title VII claims establishes a claim of retaliation, under the facts presented here, Plaintiff did not engage in a protected activity when he declined the offer to release any and all claims in exchange for reinstatement. *See Cox v. City of Houston*, 2005 WL 2086166 (S.D. Tex. Aug. 26, 2005).

Moreover, even if Plaintiff could establish a prima facie case and create a fact issue sufficient to survive summary judgment on this particular retaliation claim, this claim is not sufficiently like or related to the charge's allegations (which states only that Plaintiff was suspended on July 16, 2004 for customer complaints and discharged in October 2004 and that he was treated differently that a black female who also received customer complaints) to be considered exhausted. The *Gupta* exception also does not apply because the alleged retaliation occurred pre-charge. *See Phongsavane v. Potter*, SA-05-CV-219 (W.D. Tex. Sept. 18, 2006) (holding that while post-charge retaliatory acts fall within *Gupta*, retaliatory acts occurring before EEO charge is filed are subject to the exhaustion requirement and should be included in the charge). Accordingly, Plaintiff has not exhausted his administrative remedies on his retaliation claim arising out of his refusal to sign the last chance agreement and release.

### 2. Retaliation relating to union grievance and EEO Hotline call

Accordingly, the remaining issue is whether there is sufficient evidence to survive summary judgment on Plaintiff's claim that SBT retaliated against him for filing a grievance that apparently alleged disparate treatment and for calling his employer's EEO hotline in July 2004. SBT argues that Plaintiff failed to inform SBT in his interrogatory response or his deposition that he called the EEO hotline, stating only that he filed a grievance. SBT argues that Plaintiff cannot now create a fact issue by submitting a contradictory self-serving affidavit with no further corroboration. SBT further argues that Plaintiff cannot establish a causal nexus between that activity and his termination because Plaintiff was suspended pending termination prior to his filing the grievance or calling the EEO hotline, and thus the termination decision was made before the protected activity. Finally, SBT argues that, even if Plaintiff did call the EEO hotline, he has no evidence that the decisionmaker behind his termination, Lee Brandt, had any knowledge of the call or Plaintiff's grievance, and thus there is no evidence of a causal connection. Accordingly, SBT argues that Plaintiff cannot establish his prima facie case. SBT further argues that Plaintiff fails to discredit its legitimate, nondiscriminatory reason for his termination.

Plaintiff states that it is undisputed that he filed the union grievance and called the EEO hotline. It is true that Defendant has no evidence to contradict Plaintiff's claim of calling the EEO hotline. And the Court must view Plaintiff's evidence as true. However, it is troubling that Plaintiff did not mention the fact that he called the EEO hotline in either his interrogatory responses or his deposition testimony. Plaintiff offers no explanation for his failure to assert this fact prior to the affidavit in response to the motion for summary judgment. Even accepting that fact as true, however, Plaintiff fails to establish a causal connection because the suspension pending termination occurred

before the grievance was filed or the call was made and because Plaintiff offers no evidence that the decisionmaker was aware of the protected activity. Moreover, SBT has offered a legitimate, nondiscriminatory reason for the suspension and termination, and Plaintiff has offered no evidence to demonstrate or raise a fact issue that the proffered reason was merely a pretext. As the Court decided previously, Pierson was not similarly situated to Plaintiff, and Plaintiff offers no other evidence to suggest pretext or that retaliation was the motive behind SBT's decision to suspend and terminate Plaintiff. Accordingly, the Court finds that summary judgment should be granted on Plaintiff's claims of retaliation related to his filing a union grievance and calling the EEO hotline.

## Conclusion

Summary judgment is granted on Plaintiff's discrimination claim because Plaintiff fails to establish his prima facie case and fails to raise a fact issue to suggest that SBT's articulated reason for terminating him was a pretext for discrimination. Summary judgment is granted on Plaintiff's retaliation claim based on his refusal to sign the last chance agreement and release because Plaintiff failed to exhaust his administrative remedies and because Plaintiff fails to raise a fact issue on causation. Summary judgment is granted on Plaintiff's remaining retaliation claims relating to his union grievance and EEO hotline call because Plaintiff fails to establish a prima facie case and fails to raise a fact issue on pretext. Costs are awarded to Defendant SBT. Defendant SBT shall file a bill of costs in the form required by the clerk of this Court within fourteen days of this Order.

SIGNED this 30th day of October, 2006.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE